We'll hear the next case on the calendar, United States v. Jones. Good morning, Your Honors. Matt Larson of the Federal Defenders for Mr. Jones. Your Honors, this Court remanded this case for further consideration, as may be just under the circumstances. We, therefore, told the district judge that we would like to put in a brief explaining why the circumstances supported a sentence reduction. The judge refused. He said, in effect, no matter what the circumstances are, I will not resentence this person. I will not even read a brief on what the circumstances that this Court flagged entail or why they, in your view, support a sentence reduction. Roberts. When he issued his order saying, submit proposals on how we should proceed, we put in a letter saying you should proceed by receiving a brief and holding a hearing to determine whether the circumstances that this Court flagged in the remand order and really the circumstances of the case generally support a sentence reduction. We said we're going to talk about those in detail. We endeavored to pursue some of the merits by getting in touch with Mr. Jones. We were blocked by the government. And then the district judge blocked us from having an in-person meeting with him in New York. We sent our person out to the prison where he was. The prison blocked us from having a private or even an in-person meeting with Mr. Jones to pursue a submission on Jones's own situation, which is one of the circumstances this Court flagged when it sent the case back to Judge Garifas. How do you respond to the view that the district court asked for proposals and you submitted your proposal, which went to what you were just saying? It previewed, certainly, the arguments that you would have made in greater detail such that the district court did have a sense of what your proposal was and what the government's proposal was. How do you respond to that? I respond that we previewed some of the issues, but one of the issues in particular, Jones's own situation, was definitely not previewed, because it had been three years since the sentencing and we were blocked at every opportunity from getting information from Mr. Jones about his situation. So, and again, by the terms of Judge Garifas's order, he sought proposals on how to proceed. And therefore, we put in our letter saying, well, you should proceed, Your Honor, by letting us brief the circumstances that the Court has flagged. Did you make any substantive arguments beyond procedural? With respect to the jurisprudential ups and downs in this area of law that had also supported a remand, we did to the extent we could. We flagged the fact that in the interim period from this Court's initial determination of the appeal until basically today, there have been huge ups and downs in this area of law about what a crime of violence is, whether robbery counts, whether the career of a prisoner counts, whether the death penalty counts. And we've had, I think, preliminarily some cases where people got the benefit of the Jones ruling, while Mr. Jones himself got no relief. But we certainly didn't get into the merits because the judge didn't ask for the merits. And the Government's position that essentially this proposal on how to proceed was our shot at the merits and our opportunity to be heard is really disingenuous. The order was limited to a proposal on how to proceed. And we even said in our letter, it is therefore limited to a procedural proposal. To then accept the Government's argument is kind of like a bait-and-switch. It's like the judge is telling us, give us a proposal on procedure, we do so. And then because we don't get into the merits, the Government essentially says, aha, you missed your chance, you lost your chance, you had your chance, it's over. That's simply not equitable, Your Honors. This Court sent the case back because the elephant in the room here about this particular case, besides all of the jurisprudential ups and downs, is that the big picture is that we're looking here at a 15-year prison sentence given to a man with an IQ of 69 for fleetingly biting the finger of a 300-pound marshal who said, putting in a sworn affidavit, that he suffered no loss from this bite. This case deserves a real second look. That's what this Court decided when it sent the case back for further consideration given the circumstances. And we said to the judge, we would like to brief those circumstances. But he said, no, I don't want to hear a brief and we're not having a hearing. It doesn't matter what you say. No relief will be given to this person. That complies with neither the letter nor the spirit of this Court's mandate in sending the case back. First to the letter, further consideration as may be just under the circumstances. Your Honors, one cannot reasonably conclude that no further consideration is just under the circumstances without considering what those circumstances are. Page 22 of our opening brief, we cite the Supreme Court's decision in Patterson in determining what justice does require. The Court is bound to consider any changes, either in fact or law, which have supervened since the judgment was entered. This Court flagged Jones's own situation. What are the facts of his case? We know of his mental impairments that were documented at the time of sentencing, but we don't know what's gone on in the three and now four years since then. Those facts may warrant all kinds of relief in three different ways. First of all, there may be evidence of post-sentencing rehabilitation, which of course would be relevant to whether justice supports a lower sentence in this case. Secondly, on the flip side, there may be evidence that incarcerating Mr. Jones, who does have these mental impairments, has only exacerbated his deficits and made it worse. I think it's generally understood that prison is not the best place for people with mental illness to be. And of course, a consideration of any sentence in court under 3553a to d is to provide for treatment in the most effective way possible. So if we learn now in the last four years Mr. Jones's deficits have only been exacerbated by more prison time, that would support an argument for another way to punish him for what he did. Thirdly, Jones himself, Jones himself. We wanted Jones to come to the hearing. We wanted Jones to speak to the judge. It can't be underestimated the potential impact of a defendant addressing a judge personally, and that's why it's such an indispensable requirement of a resentencing proceeding, because, you know, this Court wouldn't be able to do that. Yes, Your Honor. You can help me clear up a confusion in my mind. I thought that the case was not remanded for resentencing, per se, but rather for further consideration, because the panel felt, as reading between the lines, that it was constrained as to what it could do. It felt that there should be a deeper inquiry as to what happened, but that it could not, given the circumstances of the case in terms of where the panel found itself, it could not remand for resentencing. And so what can we do in that, in this circumstance, where the case is not formally remanded for resentencing, it's remanded for further consideration? Go ahead. What you can do, Your Honor, and what you respectfully should do is enforce this Court's mandate. The Court did not mandate, though. Tell me what the mandate was. The mandate says. I mean, the conclusion I wrote said, for the reasons stated above, we affirm the sentence, and that was agreed to by the two concurring judges, imposed by the district court, and remand, unusual to affirm and remand for further consideration. But we remanded for further consideration, as may be just under the circumstances. And that was a cue from Judge Calabresi's concurrence, that there were circumstances at issue here having to do with the vagaries of the changes in the laws, and so forth, and the timing of this particular case that led to this particular sentence at this particular time when many other people were getting the benefit of the changes that were occurring. So it's further consideration. It wasn't re-sentencing. We didn't specify re-sentencing, and that was the mandate. It was further consideration, right? Yes, Your Honor. Yes. Further consideration as may be just under the circumstances. Right. And we've briefed as we've briefed why that necessarily requires consideration of the circumstances, and that's precisely what we asked to do in district court. We said, here are the circumstances, the Court has flagged, not just the jurors' prudential ups and downs, but also Jones's own situation, because the concurrence from Judges Calabresi and Hall also talk about the substance of the sentence here. They note Mr. Jones's intellectual impairments, his IQ of 69, the fact that this bite was essentially trivial to the 300-pound marshal who said he suffered no loss and said, in effect, this case deserves a second look for that reason, too. We want to understand a little bit more about why the district judge felt compelled to give this particular person a 15-year prison sentence for biting this person's  finger. And so it said, please be the one. There's another troubling aspect of this case, and that is that after the sentence was imposed, the defendant was somewhat unkind to the judge, and in a way that, you know, one could see that it might get any judge pretty upset. And I wondered if that was one of the circumstances that should be considered here now as to what, you know, what would be just. As to the outburst? The outburst. I would like to make two points, if I may, to that. I mean, you called him a racist, and he used the F word, I think, and a few other things. Yes. Terrible language toward the judge that no one should use. Right. And I just want to make two points about this. It's also one that language that any judge should not let interfere with the judge's ability to make a just determination. And I thank Your Honor for recognizing that fact, because as Your Honor knows, that's one of the points we make in our briefing as to why reassignment is warranted here. Because Judge Gariff has been saying, I don't even want to read a brief from you as to why you might merit a lower sentence. He cited, among other reasons, these personal insults that Mr. Jones had made against him three years earlier. That, I think, gives one pause as to whether perhaps an objective observer might reasonably question the impartiality. That's the standard under preserving the appearance of justice. We're not saying Judge Gariff is biased, and we're not saying he's incapable of listening fairly. But the cases that we've cited in our brief that order reassignment, it's on all fours with that factual pattern. They say we're not. Roberts. There was lack of remorse, was it not? So, you know, it wasn't some kind of personal. It seems like that's what you're implying here. And that's not what I saw from the context of the case. The lack of remorse, that is how it was characterized when Mr. Jones exploded upon learning for the first time that he was going to be sent to prison for 15 years. And I think what Mr. Jones could have explained on remand, but was not allowed to, is why he did that, Your Honor, because up until then, there was obviously a fight about what the guideline range was. It was either 3 to 4 years or 20 years. Our position was that it was 3 to 4. The government recommended an unspecified but significant term, but the first that anyone heard of the 15 years came when Judge Gariff announced it. And to Mr. Jones, given his impaired intellectual functioning and given his situation and given the fact that he was on the eve of release from his seven-and-a-half-year prison sentence when he did bite the finger, I think it's understandable to an outside observer that he might have responded that way. It's not okay that he responded that way. It's not all right. But I think that's one of the things Mr. Jones could have spoken to at a remand proceeding. He could have explained to the judge why the shock of this double long sentence as to what he had just finished serving just when he's on the eve of going back to his family was devastating him and caused him to snap in the way that he did and to curse at the judge. I think he could have explained that, and his explanation may have carried some weight with Judge Gariffas. We'll never know, though, because Judge Gariffas didn't want to hear anything, not just from Mr. Jones, but even from us. He didn't want to read the brief. I don't think that that is a faithful, a full and scrupulous enforcement of this Court's mandate to give this Court, to give this case further consideration as maybe just under the circumstances. The circumstances simply were not explored. Thank you. Good morning. May it please the Court. My name is Maggie Lee, and I represent the United States today and was also the prosecutor at the trial and the case at issue, as well as the subsequent district court proceedings. Just starting quickly with where Mr. Larson left off, I think there's a very important part of this outburst that is not being referenced and was omitted, in that it is clear from the record that he got into a physical altercation with the marshals and extra CSOs had to be called to the courtroom, and that's what Judge Gariffas is referencing. So when he says there's a lack of remorse, he's referring to an instance where an individual has just gotten sentenced for assaulting a Federal marshal. Upon hearing the sentence, he lashes out at the Court and then gets in a physical altercation with the marshals that requires extra CSOs to come there. And so I think it's fair and appropriate for the district court to have cited that in saying that there was a lack of remorse. But turning to the underlying issue here, and I think that Mr. Larson and Jones argues a lot about the spirit of the mandate and essentially argues that anything short of a resentencing was inconsistent with the spirit of the mandate. But I think it's important to look at the actual mandate, as Judge Walker noted, in that it was a discretionary mandate. There's no dispute that it was discretionary in nature. And while we didn't object, we didn't claim that he was legally prohibited from conducting a resentencing, nor was it required under it. And the specific issues raised in the concurrence, which I think are important to focus on, especially in light of the absurdity, is Judge Calabresi wants to know what the district court know in his description of what he says is the absurdity. I think that there has been sort of an attachment of absurdity to the actual sentence as opposed to the circumstances. And Judge Calabresi says, what is more, and this may be the true source of my sense of absurdity, there appears to be no way in which to ask the district court to reconsider the sentence in view of the happenstance and to view of its own assessment of Jones' crimes and of its downward departure. And it asks the central question to the district court, which Judge Garifuss cited in his thoughtful order, in which he says, in light of the sentences that the other similarly situated guilty defendants have received, and in light of Jones' Odin situation, both of which you, as a district judge, are best suited to determine what is the sentence that you deem is appropriate in this case. And in multiple moments in the concurrence, there's a reference to the fact that Judge Garifuss is best situated to make a determination as to what the appropriate sentence is. And this Court asked Judge Garifuss to look at the happenstances, to look at the appropriate sentence. And even in another part of the concurrence, it mentions that there's an open question as to whether or not this sentence was a result of Judge Garifuss believing this was as far below the guidelines as he could go, or it was Judge Garifuss's decision, based on the nature and circumstances as well as the very significant and lengthy criminal history of this defendant, that it's an appropriate sentence. And when you look at Judge Garifuss's order, he very clearly invoked the specific like the language and concepts of the concurrence. He thoughtfully considered it. He wrote out of respect for the concerns articulated in the concurrence. The Court has now revisited this matter. And respectfully, and upon further reflection, looking at the entire record, having cited the procedural history, having cited the parties' submissions, as well as his history with the case, he answered that question clearly and unequivocally, that he deemed that the 15-year sentence was appropriate. But the concurrence, part of the mandate in this case? I mean, it seems to me that district court sort of went above and beyond in sort of in care and referencing the issues that were raised. But it's not clear to me that he had to do that. I agree, Your Honor. I think that as is clear from the footnote that actually cites to the 2106 and the cases that were cited, this Court had authority to provide specific direction in the mandate to the district court, to order it to consider specific issues, to order it to conduct a resentencing. And it chose a discretionary mandate to reconsider, as may be just under the circumstance. I think Judge Garifuss did go above and beyond. He really thought about the concurrence, as well as the opinion, as well as the issues procedurally that had been raised at this case. He looked at the submissions of the party, which were not mere scheduling procedural issues, as Jones would have you believe, and he came to a thoughtful conclusion that answered the central question of the concurrence, which was, what do you think is the appropriate sentence? And Judge Garifuss said that it was 15 years. And he didn't say, I don't want to hear anything and I don't want to rethink anything. He respected the concurrence. He... I think, respectfully, the order did not merely say, please submit your proposals as to next steps. The order that Judge Garifuss gave was taking into account the Second Circuit's affirmance of the judgment of this Court and the mandate, and it also cites to a specific portion of the concurrence. And it was also under the guise of, Jones had asked to be, asked the government to move him. The government had said that the Court needs to order it. And so there was a dispute as to what would be the next steps. And the Court ordered us to submit our proposals. And we both submitted proposals that were detailed and substantive. And I think that Jones's own six-page, single-spaced letter discussing the law and some of the issues is inconsistent with his position, that he thought that this was just a procedural letter that he was putting in and that it was of no consequence outside of that. But I also think that, quite frankly, the Court wasn't obligated to take briefs if it didn't want to. It wasn't obligated to take any specific action. It was a discretionary mandate that said, as may be just under the circumstances. And I think taking the proposals, reviewing all of it, really digging in in the literature that the Court did, went above and beyond what was asked of it. And it clearly showed that it was consistent with the spirit of the mandate. And the central question, which was, Judge Garifas, as the person best positioned to make a decision about the appropriate sentence, what do you deem it should be? And Judge Garifas said 15 years. And simply because that's not what Jones wants and he wanted a full resentencing doesn't mean that it's in any way inconsistent with the mandate or that Judge Garifas didn't give thoughtful and careful consideration to what was sent back to him. If there aren't any other questions, I'll sit down. Thank you, Your Honor. One of the circumstances that this Court flagged was Jones' own situation. I don't think there's a dispute that we couldn't provide any information about that because we were blocked at every turn from accessing that information. Three and now four years have elapsed since the original sentencing, and we have been unable to make a merits submission on this point. The government's position that effectively we made a merits submission when we proposed how the Court should proceed is simply not accurate. Page 85 of the appendix is the order from Judge Garifas where he says submit proposals as to how the Court should proceed. And, of course, yes, we did flag the merits that were available to us because we are advocates advocates. Sotomayor, how the Court should proceed is not how the Court should proceed in resentencing. It's how the Court should proceed. Are we going to, you know, going to have a resentencing? And the judge made a determination on that. Right. And we said this is correct. This Court did not order a resentencing. Right. It sent it back for further consideration under the circumstances. We said we would like to explain to you why the circumstances that are relevant in this case support resentencing. We didn't say you have to resentence. If the Court looks at our letter, it's very clear. We said we propose a brief and a hearing so the Court can decide whether to resentence. And in that proposal, of course, because we are advocates, we flagged the merits that were available to us at that time, namely the jurisprudential ups and downs, but we necessarily could not address the merits of Jones's own situation, which was another reason flagged for sending this case back. Because, again, despite what the government may have you believe, this is not just  Sotomayor, I don't recall any statement about Jones's situation as it may have changed from the original sentence, after the original sentence was imposed, to, you know, if you will, updating his resume before a resentencing. I don't think that was part of the picture that Justice Calabresi was interested in. He was concerned about the circumstances of the sentencing occurring amidst the vagaries of what was happening in other cases. That's certainly accurate, Your Honor, but it wasn't only that. Because if you read his and Judge Hall's concurrence, it also flags the facts of this case and the facts of this 15-year sentence and the facts of Mr. Jones's impairments. And it says, in effect, something about this sentence is not quite right to us. We would like it to be a second look under all of the circumstances relevant to whether 15 years is really the right number. And that is what we endeavored to do when we proposed briefing them. And the judge didn't have to hold a hearing, but to not receive any information when the remand is to consider whether you should do something under the circumstances, I think it necessitates a consideration of the circumstances that were flagged. And the judge said, no, I don't think that that's a full and scrupulous carrying out of this Court's mandate, and this Court has an institutional interest in making sure the mandates are executed. All of the points that you're making about the nature of the crime and all of that was made at the time of the original sentence, before the first appeal. And then there were all the legal questions about whether this was a crime of violence and under the guidelines, and then the beckles came along and all of that. So all of those matters had been considered at that time by the judge. And somehow I think you're trying to shoehorn in the fact that he's been a better prisoner since then as some as a basis for a getting a resentencing, but that's not what the Court had in mind when it remanded. Well, Your Honor, on page 23 of the opinion, Judges Calabresi and Hall say, the sentence is not substantively unreasonable. We know there's a very high bar for that in this and every other circuit, but I believe the result to be close to absurd. Now, they don't say only because of the Johnson issues at play in this case, because they also flag the substance of what is going on here, the bigger picture, giving a mentally impaired man a 15-year prison sentence for biting someone's finger. Now, maybe that doesn't clear the bar of substantively unreasonable, but the Court said it is close to absurd. We are sending it back for consideration of everything, the Johnson issues and the but we necessarily couldn't preview the other issues because we were blocked at every turn. All we're asking for here is for this Court to enforce its mandate and to let Mr. Jones at least have a shot at less than 15 years in prison for a finger bite. Thank you.